UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PEGGY TOPPEL,

        Plaintiff,                                       Hon. Ellen S.  Carmody

v.

                                             Case No. 1:11-cv-720

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim

for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and

XVI of the Social Security Act.  On October 4, 2011, the parties agreed to proceed in this Court for

all further proceedings, including an order of final judgment.  (Dkt. #9).

Section 405(g) limits the Court to a review of the administrative record and provides

that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The

Commissioner has found that Plaintiff is not disabled within the meaning of the Act.  For the reasons

stated below, the Court concludes that the Commissioner's decision is not supported by substantial

evidence.  Accordingly, the Commissioner's decision is **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 44 years old on the date of the ALJ's decision. (Tr. 21, 140). She successfully completed high school and worked previously as an assembler, secretary, and administrative assistant. (Tr. 20, 151, 161-66).

Plaintiff applied for benefits on June 19, 2008, alleging that she had been disabled since November 1, 2007, due to diabetes and fibromyalgia. (Tr. 140-44, 150). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 80-139). On May 13, 2010, Plaintiff appeared before ALJ Gary Suttles, with testimony being offered by Plaintiff and a vocational expert. (Tr. 31-79). In a written decision dated June 18, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 12-21). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on March 31, 2009. (Tr. 14). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## RELEVANT MEDICAL HISTORY

Treatment notes dated December 3, 2007, indicate that Plaintiff "meets fibromyalgia diagnosis," but "seems to have a rather dramatic response to Lyrica." (Tr. 208). Specifically, Plaintiff reported that Lyrica "has made a great difference" in her fibromyalgia symptoms. (Tr. 208). On January 4, 2008, Plaintiff reported that "Lyrica is significantly helping her pain." (Tr. 206). Plaintiff was instructed to begin "an exercise program" which included "moderate physical activity" 30 minutes daily. (Tr. 206). On April 22, 2008, Plaintiff reported that "her fibromyalgia is actually doing excellent" and that "she is active and feeling as well as she has in some time." (Tr. 201).

On June 28, 2008, Plaintiff completed a report regarding her activities. (Tr. 169-76). Plaintiff reported that on a typical day she home schools her son, uses a computer, reads or watches the news, prepares meals, performs "light" household chores, takes her dog for a walk, reads, and plays computer games. (Tr. 169-76). Plaintiff reported that she shops for groceries, clothing, and household items. (Tr. 172). Plaintiff also reported that she watches movies, talks on the phone, entertains "company," and "chat[s] online." (Tr. 173).

On July 25, 2008, Dr. John Pai completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 235-48). The doctor concluded that Plaintiff was experiencing "no medically determinable impairment." (Tr. 235).

On April 3, 2009, Plaintiff was examined by Dr. Chris Sloffer. (Tr. 344-45). Plaintiff reported that she was "having trouble with gradual loss of vision." (Tr. 344). Specifically, Plaintiff reported experiencing decreased visual acuity and loss of bitemporal vision. (Tr. 344). An MRI of Plaintiff's brain revealed the presence of a pituitary tumor which appeared to be displacing the optic

chiasm.[1]  (Tr. 345).  On May 20, 2009, Dr. Sloffer performed a resection of Plaintiff's pituitary tumor.  (Tr. 346-48).

Treatment notes dated August 24, 2009, indicate that Plaintiff is "feeling well" and that "her energy level is much improved."  (Tr. 261).  Treatment notes dated September 17, 2009, indicate that Plaintiff's "thyroid function is normal."  (Tr. 259).  Treatment notes dated December 2, 2009, indicate that Plaintiff's pituitary tumor "has been completely decompressed" and that "there is no evidence for recurrent pituitary tumor."  (Tr. 257).  It was further noted that Plaintiff exhibited "normal pituitary function post-operatively."  (Tr. 257-58).

Treatment notes dated December 14, 2009, indicate that Plaintiff's diabetes was "under fairly good control."  (Tr. 353).  Treatment notes dated March 24, 2010, indicate that Plaintiff's diabetes was "still under good control."  (Tr. 351).  On May 15, 2010, Plaintiff participated in an MRI examination of her cervical spine the results of which were "normal."  (Tr. 359).

At the administrative hearing, Plaintiff testified that she is "constantly fatigued and tired" because she is unable to obtain an adequate amount of sleep.  (Tr. 51-52).  Plaintiff testified that she is unable to prepare meals or perform anything other than "easy things" around the house. (Tr. 58).  Plaintiff testified that she cannot sit for more than 15 minutes, stand for more than five minutes, or walk for more than five minutes at one time.  (Tr. 59-60).  Plaintiff testified that she was unable to lift even a gallon of milk.  (Tr. 60).  Plaintiff testified that she was unable to work because she experiences "too much pain" and because "it's very hard. . .to stay focused."  (Tr. 62).  Plaintiff

---

[1] The optic chiasm is the area in the brain where the optic nerves cross and carry information to the brain. *See* optic Chiasm, available at http://www.alleydog.com/glossary/definition.php?term=Optic%20Chiasm (last visited on August 27, 2012).

also testified, however, that she supervises the home schooling of her son, spending approximately four hours daily providing instruction. (Tr. 52-57). Plaintiff also testified that she recently traveled to Pennsylvania and Florida. (Tr. 60-61).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.  While the burden of proof shifts

to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the

procedure, the point at which her residual functioning capacity (RFC) is determined.  *See Bowen v.*

*Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.

1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

      The ALJ determined that Plaintiff suffered from: (1) obesity; (2) fibromyalgia; (3)

pituitary lesion; and (4) panic disorder, severe impairments that whether considered alone or in

combination with other impairments, failed to satisfy the requirements of any impairment identified

in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 14-16).

      With respect to Plaintiff's residual functional capacity, the ALJ determined that

Plaintiff retained the capacity to perform work subject to the following limitations: (1) she can lift

20 pounds occasionally and 10 pounds frequently; (2) she requires the option to sit/stand at will; (3)

she can walk for four hours during an 8-hour workday; (4) she can frequently use her lower

extremities to perform push/pull activities; (5) she can occasionally climb stairs, but can never run

or climb ladders, ropes, or scaffolds; (6) she can occasionally bend, stoop, crouch, crawl, balance,

twist, and squat; (7) she must have only limited exposure to heights, dangerous machinery, or uneven

surfaces; (8) she is able to get along with others and understand simple instructions; (9) she is able

to concentrate and perform simple tasks; (10) she is able to respond and adapt to workplace changes

and supervision; and (11) she can only have limited public contact.  (Tr. 16).  The ALJ, based on

testimony from a vocational expert, found that Plaintiff retained the ability to perform her past

relevant work as an assembler and secretary. (Tr. 20).[3] Accordingly, the ALJ concluded that

Plaintiff was not disabled as defined by the Social Security Act.


          a.       The ALJ Properly Evaluated the Medical Evidence

        On January 7, 2010, Dr. Thomas Walsh completed a report regarding Plaintiff's

physical residual functional capacity. (Tr. 249-52). The doctor reported that Plaintiff could, without

interruption, sit for 15 minutes, stand for five to 10 minutes and walk for five minutes. (Tr. 249).

The doctor reported that during an eight-hour workday, Plaintiff could sit for four hours, stand for

one hour and walk for one hour. (Tr. 249). The doctor also reported that Plaintiff required a

sit/stand option. (Tr. 249). Dr. Walsh reported that Plaintiff could "occasionally" lift five pounds,

but could "never" lift more than five pounds. (Tr. 249). The doctor reported that Plaintiff could

"occasionally" stoop, climb ramps/stairs, and reach above shoulder level but could "never" squat,

kneel, crouch, or crawl. (Tr. 250). The doctor reported that Plaintiff could "occasionally" perform

handling and fingering activities with her upper extremities. (Tr. 250). The doctor also reported that

Plaintiff could "occasionally" operate hand controls and perform push/pull activities with her upper

extremities. (Tr. 251). Plaintiff argues that the ALJ erred by failing to accord controlling weight to

Dr. Walsh's opinion.

        The treating physician doctrine recognizes that medical professionals who have a long

history of caring for a claimant and her maladies generally possess significant insight into her

medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must,

---

    [3] The vocational expert further testified that there existed approximately 2,000 jobs in the Grand Rapids, Michigan area (and approximately 840,000 jobs nationally) which an individual could perform consistent with Plaintiff's residual functional capacity. (Tr. 72-74).

therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544.  In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).  Instead, the record must reflect that the ALJ considered those factors relevant

to his assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

The ALJ articulated three reasons for affording Dr. Walsh's opinion "little weight." As the ALJ observed, the opinions expressed by Dr. Walsh in the aforementioned report are inconsistent with his contemporaneous treatment notes. (Tr. 300-06). The ALJ also noted that Plaintiff was treated by Dr. Walsh only "for a short period of physical therapy related to knee pain." (Tr. 19). Accordingly, the ALJ concluded that "statements [by Dr. Walsh] relating to the limiting effects of [Plaintiff's] other impairments are not persuasive." (Tr. 19). Finally, as the ALJ correctly observed, the assessment by Dr. Walsh "is not supported by the record as a whole." (Tr. 19). The reasons articulated by the ALJ for discounting Dr. Walsh's opinion are supported by substantial evidence as the medical record detailed above reveals. The Court, therefore, discerns no error in the ALJ's evaluation of Dr. Walsh's opinion.

b.      The ALJ Improperly Discounted Plaintiff's Subjective Allegations

As noted above, Plaintiff testified at the administrative hearing that she was impaired to an extent far greater than that recognized by the ALJ. Plaintiff argues that the ALJ erred by failing to accord controlling weight to her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th

Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed.

Appx. 981, 989 (6th Cir., Feb. 10, 2009).  Instead, as the Sixth Circuit has established, a claimant's

assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.  If there is, we then examine: (1)
> whether objective medical evidence confirms the severity of the
> alleged pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted).  This standard is often referred to as the *Duncan*

standard.  *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July

29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may

support a finding of disability only where objective medical evidence confirms the severity of the

alleged symptoms."  *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).

However, where the objective medical evidence fails to confirm the severity of a claimant's

subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to

resolve the significant conflicts in the administrative record."  *Workman*, 105 Fed. Appx. at 801

(citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be

accorded great weight and deference."  *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d

at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t

is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the

witnesses and weigh and evaluate their testimony").  It is not for this Court to reevaluate such

evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ discounted Plaintiff's subjective allegations as such were "not credible." (Tr. 17). As the ALJ recognized, the medical evidence, including Plaintiff's reported activities, is inconsistent with her claims of debilitating pain and limitation. (Tr. 17-19). As for Plaintiff's claims of debilitating mental impairments, the ALJ observed that such claims are contradicted by the medical record, including the fact that Plaintiff has never sought regular treatment for such. (Tr. 18-19). In sum, the ALJ's decision to discount Plaintiff's subjective allegations is supported by substantial evidence. *See Norris v. Commissioner of Social Security*, 2012 WL 372986 at *4-5 (6th Cir., Feb. 7, 2012) (where the ALJ "did not misconstrue facts in the record or overlook other significant evidence. . .and identified specific facts supported by the record" which to "a reasonable mind" would "cast doubt on" a claimant's subjective allegations, the ALJ's decision to discount the claimant's credibility is not in error).

c.      The ALJ Properly Relied on the Opinion of a Disability Examiner

In his opinion, the ALJ made reference to the results of an RFC evaluation performed by Angela Maichele, a Disability Examiner. (Tr. 227-34). In his opinion, the ALJ mistakenly referred to Maichele as a doctor and state agency medical consultant. (Tr. 19). Plaintiff asserts that because disability examiners are not considered acceptable medical sources, the ALJ's error entitles her to relief.

While the ALJ mistakenly referred to Maichele as a doctor, the ALJ did not afford controlling weight to her opinion. (Tr. 19). Instead, the ALJ merely afforded the opinion great weight as it is consistent with the evidence of record. Maichele's opinion is consistent with the ALJ's RFC determination. As the ALJ's RFC determination is supported by substantial evidence, any error in the ALJ's evaluation of Maichele's opinion is harmless and not a basis for relief. *See Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date: September 7, 2012                              /s/ Ellen S. Carmody
                                                     ELLEN S. CARMODY
                                                     United States Magistrate Judge


13